AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of: *(Briefly describe the property to be searched or identify the person by name and address)* Black WD External Hard Drive; No IMEI associated with this device; ("Target Device 4") | Case No. **24mj4813** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is hereby incorporated by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☒ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 922; 18 U.S.C. Sec. 924; 21 U.S.C. Sec. 841 | Manufacture firearm without a license and felon in possession of a firearm/ammunition; possession of a firearm in furtherance of a drug trafficking crime; possession of a controlled substance with intent to distribute. |

The application is based on these facts:

See attached Affidavit of Gregory Mattson, Special Agent, ATF, which is hereby incorporated by reference.

☒ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days _____:)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Gregory Mattson*
*Applicant's signature*

Gregory Mattson, Special Agent, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____telephone_____ *(specify reliable electronic means).*

Date: December 20, 2024

*/s/ Steve B. Chu*
*Judge's Signature*

City and State: San Diego, California

Honorable Steve B. Chu, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
ELECTRONIC DEVICE TO BE SEARCHED

The following property is to be searched:

Black WD External Hard Drive
SN: WX12D22LELY0
No IMEI associated with this device
**("Target Device 4")**

**Target Device 4** is being stored at the San Diego Group IV, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Vault located at 5901 Priestly Dr., Suite 304, Carlsbad, California, 92008.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search **Target Device 4** described in Attachment A, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Device 4**. The seizure and search of the **Target Device 4** will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device 4** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data concerning violations of for the period of January 1, 2023, to August 8, 2024:

a. tending to indicate efforts to acquire, possess, distribute, and/or manufacture firearms, ammunition, or controlled substances;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition and possession of firearms and/or the illegal acquisition, manufacturing, and distribution of firearms and controlled substances;

c. tending to identify co-conspirators, criminal associates, sources, or others involved in the acquisition and possession of firearms and/or illegal acquisition, manufacturing, and distribution of firearms and controlled substances;

d. tending to identify travel to or presence at locations involved in the acquisition and possession of firearms and/or illegal acquisition, manufacturing, and distribution of firearms and controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or,

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 18, United States Code, Section 922(a)(1)(A) – manufacturing firearms without a license; Title 21, United States Code, Section 841 – possession of a controlled substance with intent to distribute; Title 18, United States Code, Section 924(c) – possession of a firearm in furtherance of a drug trafficking crime; Title 18, United States Code, Section 922(g)(1) – felon in possession of ammunition; Title 18, United States Code, Section 922(g)(1) – felon in possession of a firearm.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Gregory Mattson, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing the search of the following electronic device:

    a.    Black WD External Hard Drive

        No IMEI associated with this device

        ("**Target Device 4**")

as described in Attachment A, and seize evidence of crimes, as described in Attachment B.

2. **Target Device 4** was seized during a search warrant and arrest executed by the San Diego Sheriff's Office at the residence located at 891 Sugarbush Drive, Vista, California on August 7, 2024. **Target Device 4** was found in Sean CHRISTIANSEN's bedroom during the search warrant. **Target Device 4** is being stored at the San Diego Group IV, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Vault located at 5901 Priestly Dr., Suite 304, Carlsbad, California, 92008.

3. Based on the information below, there is probable cause to believe that the cellular phones, computer, and hard drive contain evidence of multiple crimes, specifically, violations of Title 18, United States Code, Section 922(a)(1)(A) – manufacturing firearms without a license; Title 21, United States Code, Section 841 – possession of a controlled substance with intent to distribute; Title 18, United States Code, Section 924(c) – possession of a firearm in furtherance of a drug trafficking crime; Title 18, United States Code, Section 922(g)(1) – felon in possession of ammunition; Title 18, United States Code, Section 922(g)(1) – felon in possession of a firearm.

## EXPERIENCE AND TRAINING

4. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States

Code, Section 2516. I also am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. I am empowered to conduct investigations of, and to make arrests for, federal offenses.

5. I am a Special Agent ("SA") with ATF and have been so since July 2023. I graduated from the Federal Law Enforcement Training Center's Criminal Investigator's Training Program, and the ATF National Academy's Special Agent Basic Training course. As an ATF SA, I have received training in federal firearms and narcotics laws.

6. Through my training, experience, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for individuals involved with illicit sales of firearms to work with or deal with other individuals, and to do so by utilizing cellular telephones to communicate with other sources of firearms, associates, and co-conspirators to further their criminal activities. I am further aware that individuals engaging in the illicit sale of firearms and controlled substances, including criminal gangs, generate many types of evidence including, but not limited to, cellular phone-related evidence, such as images, video, text, and voice messages documenting their illicit activities and identifying other traffickers, gang members, and associates.

7. I know that crimes carried out by more than one person, like some of the crimes here, often involve some amount of communication among those involved before, during, and after the crime. I know that individuals involved in the illicit sale of firearms and controlled substances will utilize these devices to communicate with co-conspirators, sources, and customers through text messages, SMS messages, calls, voicemails, social media and social networking/communication applications, and emails. In my training and experience, such communications have revealed the identities and relationships between and among the involved individuals, as well as their motive, knowledge, and intent relating to the crime. Moreover, such communications have also revealed consciousness of guilt and efforts to impede police investigation. I further know that the way these individuals

use these devices can reveal information related to their location and/or activities before, during, and after engaging in criminal activity through collected location information, application usage, and images or video recordings.

      8.     Based upon my training and experience as an ATF Special Agent, and consultations with law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

      a.     Individuals involved in the illegal possession, acquisition, distribution, and manufacturing of firearms and controlled substances will use cellular telephones and computers because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

      b.     Individuals involved in the illegal possession, acquisition, distribution, and manufacturing of firearms and controlled substances and their accomplices will use cellular telephones and computers to coordinate with each other, contact their buyers and suppliers, and negotiate the purchase or sale of their illegal merchandise;

      c.     Individuals involved in the illegal possession, acquisition, distribution, and manufacturing of firearms and controlled substances and their accomplices will use cellular telephones and computers because they can easily arrange and/or determine what time their buyers or suppliers will arrive at predetermined locations;

      d.     Individuals involved in the illegal possession, acquisition, distribution, and manufacturing of firearms and controlled substances will use cellular telephones and computers to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

      e.     Individuals involved in the illegal possession, acquisition, and/or manufacturing of firearms and controlled substances will use cellular telephones or computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and,

      f.     The use of cellular telephones and computers by individuals involved in

the illegal possession, acquisition, and manufacturing of firearms and controlled substances, tend to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a person involved in the illegal possession or acquisition of firearms dealer's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience as an ATF Special Agent, and consultations with law enforcement officers experienced in firearms and narcotics investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones and computers/hard drives yields evidence:

  a. tending to indicate efforts to acquire, possess, distribute, and/or manufacture firearms, ammunition, or controlled substances;

  b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition and possession of firearms and/or the illegal acquisition, manufacturing, and distribution of firearms and controlled substances;

    c. tending to identify co-conspirators, criminal associates, sources, or others involved in the acquisition and possession of firearms and/or illegal acquisition, manufacturing, and distribution of firearms and controlled substances;

    d. tending to identify travel to or presence at locations involved in the acquisition and possession of firearms and/or illegal acquisition, manufacturing, and distribution of firearms and controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

 11. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

 12. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case.

## FACTS SUPPORTING PROBABLE CAUSE

 13. On August 7, 2024, deputies with the San Diego Sheriff's Department were dispatched to investigate a family disturbance at 891 Sugarbush Dr., Vista, CA. After arriving at the scene, a deputy contacted the owner of the residence, who stated that his son, Sean CHRISTIANSEN, was a felon in possession of firearms. The owner of the residence invited a deputy inside and showed the deputy CHRISTIANSEN's room. Through an ajar doorway, the deputy could see what appeared to be firearms. Records checks showed Sean CHRISTIANSEN had more than one felony conviction; because

1 CHRISTIANSEN had a felony conviction, he is prohibited from possessing firearms and
2 ammunition.
3     14. Later that same day, San Diego Sheriff's Deputies executed a state search
4 warrant on the residence located at 891 Sugarbush Dr, Vista, CA. The items seized from
5 CHRISTIANSEN's bedroom included, but were not limited to: a 3D printer, two one-
6 hundred round rifle magazines with one of them loaded with 5.56 caliber ammunition,
7 **Target Device 4**, 140.8 grams of Psylocibin Mushrooms, an un-serialized privately
8 manufactured firearm (PMF) pistol, eight 3D printed AR-15 receivers, twenty-four 3D
9 printed handgun frames, two 3D printed UZI style lower, various digital storage devices
10 (thumb drives, SD cards, etc.), and indicia of use of the bedroom by CHRISTIANSEN such
11 as credit cards, mail, and prescriptions with his name.
12     15. During a post-*Miranda* interview with ATF, CHRISTIANSEN expressed
13 knowledge of 3D printing and obtaining blueprints from the internet to assist in the 3D
14 printing process. CHRISTIANSEN neither denied nor admitted to 3D printing the firearms
15 seized from his bedroom.
16     16. CHRISTIANSEN was indicted for being a felon in possession of ammunition
17 on or about September 11, 2024, within the Southern District of California (24-cr-01885-
18 JAH). A Superseding Indictment was issued by a Grand Jury on or about October 9, 2024,
19 charging CHRISTIANSEN with felon in possession of ammunition and firearms.
20     17. I believe searching **Target Device 4** would yield evidence relating to the
21 unlicensed manufacturing of firearms and possessing of ammunition and firearms by a
22 convicted felon. Furthermore, due to my training and experience as an ATF SA, I believe
23 that the quantity of controlled substances and the quantity of firearms seized from
24 CHRISTIANSEN's bedroom is indicative of sales of both firearms and controlled
25 substances. Thus, I believe that the **Target Device 4** would yield evidence related to the
26 possession of controlled substances and the possession of a firearm in furtherance of a drug
27 trafficking crime.
28

18.     I previously sought a search warrant for several devices, including **Target Device 4** (24MJ3663-MSB). On December 17, 2024, I began to review the working copy of **Target Device 4**. While I reviewed the information, I noticed multiple 3D printing files on **Target Device 4**. While I could not see the exact content of those files, they were titled in a way that strongly suggested they were files utilized to 3D print firearms. For example, "printyour2AR15 5.stl" and "PY2A G17 Gen5 4.0.stl". I believe "printyour2AR15 5.stl," refers to (3D) printing your own AR-15 style firearm and "PY2A G17 Gen5 4.0.stl" refers to (3D) printing your own Glock 17 Gen5 firearm. I checked the date of the files and realized it was outside the time scope of the previously issued search warrant. The files I saw, were dated at different points in 2023. Thus, I stopped reviewing the copy of **Target Device 4**, and I am seeking the instant warrant to expand the timeframe of the search.

19.     Based on my training and experience, including my personal experience as a cellphone, computer, and hard drive user, that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of **Target Device 4** (either intentionally or automatically) which may identify other persons involved in the illegal acquisition, possession, sales, and or manufacturing of firearms. Because of the ubiquitous use of cellphones, computers, and hard drives, their growing memory capacity, and their routine storage processes, this information is often retained on the device for long periods of time, months or even years after they were created. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in firearm and controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the firearm acquisition, possession, sale, and manufacturing by CHRISTIANSEN, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of **Target Device 4**.

20. Based upon my training and experience, it is also not unusual for individuals, such as CHRISTIANSEN, to be involved in the aforementioned distribution or firearm possession activities for weeks or months prior to their arrest. Accordingly, I request permission to search **Target Device 4** for data beginning on January 1, 2023, up to and including August 8, 2024 (the day after CHRISTIANSEN's arrest by the Sheriff's Department).

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO HARD DRIVE

21. With the approval of the Court in signing this warrant, agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, which may contain data subject to seizure pursuant to this warrant:

   a. A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment, and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

   b. Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.

Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it, when and how it was created, downloaded, or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Sometimes it is possible to recover and entire document that was never saved to the hard drive if the document was printed. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications do not store data searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computer or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting as the keyboard.

    c. It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies, and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and

videos, calendars, and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

      d.    Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has been mind-boggling. For example, as single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced paged of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data. And this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

      e.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred and twenty (120) days from the data of seizure pursuant to this warrant, absent further application to this Court.

f. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

22. The United States has not attempted to obtain this information by other means except as described herein.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

24. Based on all of the facts and circumstances described above, there is probable cause to conclude that **Target Devices 4,** described in Attachment A, contains evidence of illegal activity, described in Attachment B. As described in this affidavit, I believe the search should extend to all evidence described in Attachment B in existence on **Target Device 4** from January 1, 2023, up to and including August 8, 2024. Accordingly, this warrant seeks to search the **Target Devices** for the evidence, fruits, and instrumentalities, of violations of Title 18, United States Code, Section 922(a)(1)(A) – manufacturing firearms without a license; Title 21, United States Code, Section 841 – possession of a controlled substance with intent to distribute; Title 18, United States Code, Section 924(c) – possession of a firearm in furtherance of a drug trafficking crime; Title 18, United States Code, Section 922(g)(1) – felon in possession of ammunition; Title 18, United States Code, Section 922(g)(1) – felon in possession of a firearm.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Gregory Mattson*
Gregory Mattson, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on December 20, 2024.

_____
HONORABLE STEVE B. CHU
United States Magistrate Judg

12